# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION, CINCINNATI

| | | |
|---|---|---|
| **FRANCIS R. MURPHY,** | : | **CASE NO. 1:23-cv-588** |
| | : | |
| **Plaintiff,** | : | **Judge Douglas R. Cole** |
| | : | |
| **v.** | : | **DEFENDANTS EVAN MCKNIGHT,** |
| | : | **CHANCE BLANKENSHIP, BRANDON** |
| **EVAN MCKNIGHT, et *al*.,** | : | **BLANKENSHIP, COREY ALLISON,** |
| | : | **AND THE CITY OF IRONTON, OHIO'S** |
| **Defendants.** | : | **MOTION FOR SUMMARY JUDGMENT** |
| | : | |

Now come Defendants Evan McKnight, Chance Blankenship, Brandon Blankenship, Corey Allison ("Defendants") and the City of Ironton, Ohio ("City")(collectively "Ironton Defendants"), through their undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully move this Honorable Court for an Order granting them summary judgment on all claims filed by Plaintiff Francis R. Murphy ("Plaintiff") and dismissing those claims with prejudice. The reasons for this Motion are set forth more fully in the attached memorandum.

Respectfully submitted,

SURDYK, DOWD & TURNER CO., L.P.A.

*/s/ Dawn M. Frick_____*
Jeffrey C. Turner (0063154)
Dawn M. Frick (0069068)
Justin R. Marks (0103811)
8163 Old Yankee Street, Suite C
Dayton, Ohio 45458
(937) 222-2333, (937) 222-1970 (fax)
jturner@sdtlawyers.com
dfrick@sdtlawyers.com
jmarks@sdtlawyers.com
*Trial Attorneys for Evan McKnight, Chance Blankenship, Brandon Blankenship, Corey Allison, and the City of Ironton, Ohio*

## MEMORANDUM IN SUPPORT

### I. INTRODUCTION AND STATEMENT OF FACTS

On September 18, 2022, Plaintiff Frank Murphy ("Murphy") obstructed the Defendants in the course of their duties as police officers of the Ironton Police Department. Defendant Evan McKnight ("McKnight") stopped a vehicle for an equipment violation within the City of Ironton, Ohio (Doc. 38, PgID 823). That vehicle was driven by Misty Robinson and her passenger was Plaintiff's wife, Jeannie Murphy (Id.). Ms. Robinson had a suspended driver's license, and Ms. Murphy was having a panic attack (Id. at 823, 837). Defendants Brandon Blankenship, Chance Blankenship, and Corey Allison ("Allison") subsequently arrived on the scene to assist as the vehicle was to be towed, and McKnight began writing the citation (Id. at 823). During the inventory and investigation, Chance Blankenship and Allison located a plastic container in the truck with a crystal-like residue, and Brandon Blankenship located a "snort straw" in Ms. Murphy's purse also containing a crystal-like residue. (Id. at 824). The crystal residues were suspected drugs. (Doc. 34, PgID 566).

While the officers were doing an inventory of the truck and addressing the traffic violation with Misty Robinson, Murphy arrived on the scene and immediately began obstructing the investigation. Murphy first approached Chance Blankenship who told Murphy to stand back on the sidewalk. (Doc. 38, 13:44-13:51).[1] Thereafter, McKnight, from the other side of the truck, also told Murphy to step away (Id., 13:54). Murphy was noticeably agitated and stated, "I didn't give nobody permission to drive that fucking truck except my wife." (Id., 14:00). Instead of stepping back, Murphy walked around the truck while McKnight was inventorying it and approached McKnight at a short distance causing McKnight to stop inventorying to address Murphy. (Id. at 14:20). Murphy,

---

[1] Defendant McKnight's body camera video was properly authenticated in his deposition and Defendants have sought leave to manually file said video. References to the video will be cited to according to the video timestamp.

visibly upset, began flailing, pointing, accusing law enforcement of planting items in his friend's truck, and questioning their inventory, all while refusing to step away (Id. at 14:40-14:53). McKnight repeatedly told Murphy to "step over there" away from the scene and even pointed with his hand and flashlight directing Murphy where to stand. (Id. at 14:55). Murphy continued to argue with McKnight and eventually stated he would record the officers; McKnight promptly stated, "*you can record us from over there*." (Id. at 15:02-15:05). Notably, McKnight told Murphy to step away approximately five times prior to Murphy stating his intention to record the police. (Id. 13:56-15:02).

Murphy then stepped approximately seven feet away, near the entrance of an uninvolved party's car port (Id. at 15:23). McKnight continued to tell Murphy to step "over there". Instead, in response, Murphy steps *into* the carport on private property next to a vehicle approximately fifteen feet from McKnight. (Id. at 15:28). Murphy did not have permission to be on the property. (Id. at 15:31; Doc. 39, PgID 949). McKnight gave one more warning for Murphy to step away, but Murphy still refused. Thus, only after Murphy substantially delayed the officers, trespassed on private property, and ignored repeated warnings to step away did McKnight attempt to place him under arrest. (Id. at 13:50-15:35; Doc. 27, PgID 215). McKnight approached Murphy and told him to put his hands behind his back, but Murphy did not comply; rather, he lifted his arms up and began pulling away from McKnight yelling at him to "let go of me." (Doc. 38, 15:35; Doc. 39, PgID 956; Doc. 27, PgID 215). Chance Blankenship and Allison came to assist McKnight due to Murphy's active resistance, but their attempts to place Murphy in handcuffs remained unsuccessful (Doc 38, 15:45-16:12). After an approximately forty second struggle, the officers performed a takedown maneuver to take Murphy to the ground to effectuate the arrest as they had only been able to apply one handcuff as Murphy actively fought them off (Doc. 38, 16:13; PgID 825). Murphy continued to actively resist by forcefully pulling away from officers. (Doc. 38, PgID 825). As such, McKnight applied two drive-stuns to Murphy's back and belly, each less than one second, to attempt to gain

compliance. (Doc. 38, 16:21-16:24). Murphy continued to resist and swung the unsecured handcuffs striking McKnight in the face. (Id. at 825; Doc. 34, PgID 610). This caused Chance Blankenship to apply short "compliance strikes" to Murphy in effort to effectuate the arrest. (Doc. 34, PgID 622). Murphy still struggled with the officers, laying on his hand as such McKnight applied two more drive-stuns, each less than one second. (Doc. 38, 16:27-16:32). Finally, after over a minute of struggle, the officers were able to place Murphy in handcuffs at which point all force stopped. (Id., 16:40). At no point did Brandon Blankenship assist in the arrest as his attention was on the increasingly agitated Jeannie Murphy. (Doc 30, PgID 387-388).

McKnight ordered Murphy to move away (approximately ten times) because Murphy hampered and delayed the Defendants' from inventorying the vehicle in which suspected narcotics were located, and also because McKnight had concerns for officer safety. (Doc. 38, PgID 824). McKnight's observations of Murphy's agitated state and knowledge of his background caused him heightened concern as McKnight was previously made aware of officer concerns related to Murphy using drugs and carrying weapons (Id.). Murphy did have a concealed weapons permit and did own guns. (Doc. 39, PgID 986). Even more, Murphy was a sizable person at 5'11" and 260 pounds. (Id. at 926-927).

After the incident, McKnight submitted the report to a detective for review and submission to the Prosecutor's Office as per custom at the police department. (Doc. 36, PgID 682). The report and criminal affidavit were submitted to the Prosecutor's Office for review and the prosecutor decided to file charges against Murphy but later dismissed them. (Doc. 1, PgID 7). Chief Wagner reviewed the incident material and recommended discipline of McKnight. However, Ironton's Mayor disagreed as to suspension or termination. Chief Wagner also requested that the Ohio Bureau

of Investigation ("BCI") review the case, but BCI declined to do so. (Cramblit Aff.; Doc. 38, PgID 821).[2]

## II.   LAW AND ARGUMENT

### A.  Standard of Review

Summary judgment is appropriate when there is no genuine dispute of material fact, and where the moving party is entitled to judgment as a matter of law. *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 448 (6th Cir. 2020) citing Fed. R. Civ. P. 56(a). The non-moving party "may not rest merely on allegations or denials in its own pleading." Fed.R.Civ.P. 56(e)(2); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548 (1986). Rather he must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993). Here, probable cause precludes any claim for unlawful seizure, and Murphy's active resistance and the Defendants' only minimal force precludes claims of excessive force and Murphy's state law claims.

### B.  The individual Defendants are entitled to qualified immunity.

"Officers are entitled to qualified immunity unless they (1) violate a constitutional right (2) that was "clearly established" at the time of the wrongdoing." *Bell v. City of S.field*, 37 F.4th 362, 367 (6th Cir. 2022). Clearly established means that if a right was violated it "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Qualified immunity stands so long as the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Raimey v. City of Niles*, 77 F.4th 441, 448 (6th Cir. 2023). It is a plaintiff's burden to show that an officer is not entitled to qualified immunity. *Rucinski v. Cnty. of Oakland*, 655 Fed.

---

[2] Mayor Cramblit's affidavit will be filed separately in support of this motion.

Appx. 338, 341 (6th Cir.). "A police officer is not liable unless relevant caselaw gave the officers "fair notice" that their [action] was unconstitutional." *Gambrel v. Knox Cty.*, 25 F.4th 391, 400 (6th Cir. 2022) citing *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021). Fair notice means a plaintiff "must identify a case with a similar fact pattern" to give an officer a warning of what the law requires. *Beck v. Hamblen Cty.*, 969 F.3d 592, 600 (6th Cir. 2020). The plaintiff must "identify 'a high 'degree of specificity' the legal rule that a government official allegedly violated.'" *Id.* at 599 citing *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).

As shown below, Murphy cannot prove a violation of a constitutional right, but even if he could, he cannot prove that a right was "clearly established." To do so he would have to demonstrate that a person for whom there is probable cause to arrest, and who actively resists that arrest, has a right not to be taken to the ground. Further, he would have to demonstrate that a person has a right after further active resistance to be free from Taser drive stuns lasting less than two seconds. Even more, Murphy must prove that after a suspect strikes a police officer in the face with handcuffs, he has a right to be free from "compliance" strikes and two further one-second drive stuns while continuing to actively resist. None of these rights were clearly established in September 2022.

## C. Counts I & II: Murphy cannot demonstrate a First Amendment violation

A plaintiff must demonstrate three elements for a First Amendment retaliation claim. *Myers v. City of Centerville*, 41 F.4th 746, 759 (6th Cir. 2022). These include: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) . . . the adverse action was motivated at least in part by the plaintiff's protected conduct." *Id.* quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Such a claim requires a lack of probable cause. "[P]robable cause to make an arrest defeats a claim that the arrest was in retaliation for speech protected by the First Amendment." *Hartman v. Thompson*, 931 F.3d 471, 484 (6th Cir. 2019) citing *Nieves v. Bartlett*,

139 S. Ct. 1715, 1721 (2019). Addressed more fully below, McKnight had probable cause to arrest Murphy at least for obstructing official business under Ohio law. Murphy delayed the Defendants in the performance of their duties because he refused to remove himself to a location conducive to officer safety and his own rights. The delay alone provided probable cause.

Defendants do not dispute that Murphy had a right to record police officers. After all, McKnight told Murphy that *he could record* and no one told him otherwise. Even more, for nearly two minutes McKnight engaged in extensive conversation with Murphy in a series of exchanges lasting approximately two minutes before initiating the arrest. (Doc. 18-1, PgID 128). Both experts agree on this. (Id.; Davis Affid. attached hereto as Ex. A at 8). Murphy's arrest had nothing to do with recording the police. The distance between him and McKnight was at issue, and this issue would have existed whether or not Murphy intended to record. The record makes this objectively clear. McKnight repeatedly tells Murphy to step away *prior* to Murphy's announcement that he would be recording. (Doc. 38, 13:56-15:00; Doc. 39, PgID 948-949; Ex. A-1 at 30). Murphy contends that because he was arrested after his stated intention to record, the arrest must be related to an exercise of the First Amendment. This is a post-hoc fallacy. An event and a subsequent event does not mean the former caused the latter.

Furthermore, although Murphy had a *right* to observe and record officers, it does not mean that right is limitless. Laws do not pursue their purpose at all costs, and no right is absolute. *Perez v. Sturgis Pub. Sch.*, 598 U.S. 142, 150 (2023); *State v. Laber*, 2015-Ohio-2758, ¶ 16, 2015 Ohio App. LEXIS 2683, *8 (4th Dist.). "[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired[.]" *M.A.L. v. Kinsland*, 543 F.3d 841, 846 (6th Cir. 2008) quoting *Heffron v. Int'l Soc. for Krishna Consciousness, Inc*., 452 U.S. 640, 647, 101 S. Ct. 2559 (1981); *City of Cleveland v. McCardle*, 139 Ohio St. 3d 414, 417 (2014). To repeatedly interrupt during such observation is not a protected activity because

a person "ha[s] no constitutional right to observe the issuance of a traffic ticket or to engage the issuing officer in conversation at that time." *King v. Ambs*, 519 F.3d 607, 614 (6th Cir. 2008) quoting *Colten v. Kentucky*, 407 U.S. 104, 92 S. Ct. 1953 (1972). This is true even if the party asserts a third-party interest. *Id*. See also *State v. Body*, 2018-Ohio-3395, ¶ 23 (2nd Dist.).

Murphy also asserts a claim under Article I, Section 11 of the Ohio Constitution. However, "the right to freedom of speech conferred under Article 1, Section 11 of the Ohio Constitution is not self-executing and does not create a private cause of action." *Place v. Warren Local Sch. Dist. Bd. of Educ.*, No. 2:21-cv-985, 2024 U.S. Dist. LEXIS 39221, at *22 (S.D. Ohio Mar. 6, 2024) citing *PDU, Inc. v. City of Cleveland*, No. 81944, 2003-Ohio-3671, 2003 WL 21555157, at *3 (Ohio Ct. App. July 10, 2003)(citations omitted). As a result, Murphy's Ohio Constitutional claim lacks merit. Accordingly, the individual Defendants are entitled to qualified immunity and Murphy's federal and state law claims for First Amendment retaliation should be dismissed.

### D.  Counts III, IV, V, VI: Plaintiff's excessive force claim is without merit.

Murphy's excessive force claims arises out of the fact that he actively resisted his arrest which resulted in Defendants using some force to take him into custody. Case law weighs heavily in favor of Defendants. When reviewing excessive force claims, courts invoke an objective-reasonableness standard guided with a fact specific inquiry based on the totality of the circumstances. *Hughey v. Easlick*, 3 F.4th 283, 289 (6th Cir. 2021).[3] This is judged "from the perspective of a reasonable officer at the scene, and not from the 20/20 vision of hindsight." *Puskas v. Delaware County*, 56 F.4th 1088, 1094 (6th Cir. 2023). But even more, "[t]he history of the

---

[3] "All claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. O'Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865 (1988). As such, any claim under the Fourteenth Amendment must fail.

interaction, as well as other past circumstances known to the officer, thus may inform the reasonableness of the use of force." *Barnes v. Felix*, 145 S. Ct. 1353, 2025 U.S. LEXIS 1834, *9.

The reasonableness of an officer's actions depends on "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). These factors, however, are non-exhaustive. *Hughey*, supra at 289. Here, Murphy's near two-minute delay and hindrance of the officers constituted obstructing official business, a second-degree misdemeanor in Ohio pursuant to R.C. § 2921.31(A). It prohibits a person from "prevent[ing], obstruct[ing], or delay[ing] the performance by a public official." *Id.* Murphy's conduct morphed into a felony because his active resistance caused a "risk of physical harm to any person." R.C. § 2921.31(B). The felony level applies even if the suspect creates a risk of physical harm to himself. *State v. Pineda*, 2021-Ohio-1540, ¶ 110 (11th Dist.).

Thus, even before Murphy was taken to the ground his struggle with police constituted a fifth-degree felony. It was only after he actively resisted with three officers that he was taken to the ground. Moreover, it was because as he resisted his arrest Murphy struck McKnight with a free-swinging handcuff that he was struck by Chance Blankenship. (Doc. 34, PgID 564-565, 610) And because he resisted and struggled that he was tased for a total of four or less seconds. (Ex. A-1 at 17-18). Murphy's actions throughout the struggle constituted a fifth-degree felony that began as a misdemeanor. As such, *Graham's* first factor weighs in favor of the Defendants.

As to the second *Graham* factor, takedowns are appropriate where there "[is] some real form of resistance or danger." *Jennings v. Fuller*, 659 Fed. Appx. 867, 870 (6th Cir. 2016). "There is no clearly established principle that prevents officers from taking individuals to the ground during an investigatory detention who have acted aggressively, failed to follow an officer's commands, and whose actions suggest they were trying to flee." *King v. City of Rockford*, 97 F.4th 379, 397 (6th

Cir. 2024). In point of fact, "[n]ot every push or shove [by a police officer], even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001)(quoting *Graham*, 490 U.S. at 396). Murphy's actions from the start of resisting arrest and throughout the struggle caused danger to himself and the officers, and both Murphy and McKnight were injured. Even more, Murphy, by virtue of his continued resistance, could have intended to flee the scene (Doc. 34, PgID 622), and that he yelled "let go of me" supports the inference he no longer wanted to be near the officers. Murphy's own expert opines that a reasonable officer could believe Murphy was trying to flee (Doc. 27-3, PgID 310). Accordingly, *Graham's* second factor is met for objective reasonableness.

As to the third *Graham* factor, active resistance is "some outward manifestation—either verbal or physical—on the part of the suspect that suggested volitional and conscious defiance." *Shumate v. City of Adrian*, 44 F.4th 427, 446 (6th Cir. 2022) citing *Eldridge v. City of Warren*, 533 F. App'x 529, 534 (6th Cir. 2013). It includes "physically struggling with, threatening, or disobeying officers." *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015) citing *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 495 (6th Cir. 2012)(collecting cases). And it includes refusing to move your hands for the police to handcuff you, at least if that inaction is coupled with other acts of defiance." *Id*. citing *Caie v. W. Bloomfield Twp.*, 485 F. App'x 92, 94, 96-97 (6th Cir. 2012). "When a suspect actively resists arrest, the police can use a [T]aser (or a knee strike) to subdue him ***." *Shumate*, supra at 446; *Rudlaff*, supra at 639 ("When an arrestee actively resists arrest … the police can constitutionally use a taser or a knee strike to subdue him."). A person enjoys a clearly established right not to be tased if there is *mere passive resistance or no resistance at all*. *Osborn v. City of Columbus*, 2022 U.S. Dist. LEXIS 107321, *21 (S.D. Ohio). Here, the only party or witness in this

case that believes Murphy was not actively resisting is Murphy. Murphy's expert[4], Defendants'

expert, and Defendant officers all stated in reports or testimony that Murphy was actively resisting.

(Doc. 27, PgID 238; Doc. 27-3, PgID 310). The third *Graham* factor weighs in favor of Defendants.

Accordingly, because all of the *Graham* factors weigh in favor of McKnight, Chance Blankenship

and Allison, they are entitled to qualified immunity on Murphy's claim of excessive force.

### E. Count VII: Murphy cannot demonstrate an unlawful seizure occurred.

"To prevail on a false arrest claim under §1983, 'a plaintiff [must] prove that the arresting

officer lacked probable cause to arrest the plaintiff.'" *Tlapanco v. Elges*, 969 F.3d 638, 652 (6th Cir.

2020) quoting *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005). "For probable

cause to exist, "the facts and circumstances known to the officer" must be sufficient to lead a

"prudent man" to believe an offense has been committed." *Novak v. City of Parma*, 33 F.4th 296,

304 (6th Cir. 2022) citing *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007). Probable cause is

not a high bar. *United States v. Moore*, 999 F.3d 993, 996 (6th Cir. 2021). Furthermore, as to

Brandon Blankenship, the Sixth Circuit has affirmed the dismissal of a federal false arrest claims

against law-enforcement defendants where those defendants were not active participants in the arrest

and did not "implicitly authorize" their subordinates to arrest a plaintiff. *Webb v. United States*, 789

F.3d 647, 667 (6th Cir. 2015). Here, there can be no dispute that Brandon Blankenship did not

actively participate in the physical arrest of Murphy.

Whether probable cause exists depends on the totality of the circumstances. *Day v. DeLong*,

358 F. Supp. 3d 687, 706 (S.D. Ohio 2019). Where probable cause does exist, it precludes a finding

---

[4] Ashley Heiberger, Murphy's expert testified:
    Q. So finally, the final factor is whether the subject is actively resisting or attempting to evade arrest by flight. And
you acknowledge here that Mr. Murphy was engaged in resistance, correct?
        A. Yes.
        Q. And would you agree that it was active resistance?
        A. Yes. (Doc. 27, PgID 238).

of an unlawful seizure. "A showing of 'probable cause provides a complete defense to a claim of false arrest," even if the officer's belief of probable cause was erroneous. *Wood v. Eubanks*, 25 F.4th 414, 421 (6th Cir. 2022). Even more, "[a]n officer cannot be liable for a Fourth Amendment violation so long as there was probable cause to make an arrest for any offense, even if not on the offense charged by the officer." *Ellison v. Martin*, 2020 U.S. Dist. LEXIS 223539, *20 (S.D. Ohio); *Amis v. Twardesky*, 637 Fed. Appx. 859, 861 (6th Cir. 2015); *Wolfe v. Hocking Cnty. Sheriff's Dep't*, 2025 U.S. Dist. LEXIS 71921, *8-9 (S.D. Ohio).[5] Further, if a court dismisses charges or an individual is later found innocent, it *does not* preclude a finding of probable cause. *Fisher v. Jordan*, 91 F.4th 419, 425 (6th Cir. 2024). Additionally, the probable cause inquiry is objective, and an officer's subjective intentions do not matter. *United States v. Jeffries*, 457 Fed. Appx. 471, fn. 1 (6th Cir. 2012).

McKnight's initial attempt to arrest was based upon Murphy's violation of Obstructing Official Business. It requires: "(1) an act by the defendant; (2) done with the purpose to prevent, obstruct, or delay a public official; (3) that actually hampers or impedes a public official; (4) while the official is acting in the performance of a lawful duty; and (5) the defendant so acts without privilege." R.C. § 2921.31(A); *Osberry v. Slusher*, 750 Fed. Appx. 385, 393 (6th Cir. 2018) quoting *Smith v. City of Wyoming*, 821 F.3d 697, 715 (6th Cir. 2016). A violation of the statute requires a suspect make an "affirmative act." *Smith*, 821 F.3d at 715. Here, Murphy committed several affirmative acts delaying the lawful investigation. First, Murphy approached McKnight at a very close proximity and continuously questioned and argued with him about the inventory and investigation. Second, after McKnight told Murphy to move away from him, Murphy did move–but

---

[5] If a constitutional claim is covered by a specific constitutional provision, such as the Fourth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the Fourteenth Amendment'" *Davis v. Gallagher*, 951 F.3d 743, 752 (6th Circ. 2020)(quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7, 117 S. Ct. 1219 (1997)). Thus, any claim for unlawful arrest and seizure under the Fourteenth Amendment must be dismissed.

only a short distance–this being an affirmative act of defiance and contrary to McKnight's lawful orders. Third, and relatedly, when Murphy did move slightly further away, he was on private property and refused to leave–property of which he admittedly did not have permission to enter. (Doc. 39, PgID 949; Doc. 38, PgID 877). This is a trespass, and trespass is an affirmative act. *Herlihy Mid-Continent Co. v. Bay City*, 293 F.2d 383, 388 (6th Cir. 1961); *State v. Folley*, 2011-Ohio-4539, ¶ 11 (2nd Dist.). It requires a person to "[k]nowingly enter or remain" on land of another, under R.C. § 2911.21, a criminal statute. Even more, "[r]epeated interruptions or disruptions of an officer's questioning of an individual <u>may</u> provide probable cause for obstructing official business under O.R.C. 2921.31(A)." *Burr v. Perkins*, 2006 U.S. Dist. LEXIS 52442, *16 (S.D. Ohio) *citing City of N. Ridgeville v. Reichbaum*, 112 Ohio App. 3d 79, 677 N.E.2d 1245, 1248-49 (Ohio Ct. App. 1996)("shouting, repeated interruptions of investigatory questioning, refusal to leave area despite repeated warnings, and forcing officers to cease initial questioning of suspect were affirmative acts sufficiently supporting conviction for obstructing official business").

Second, Murphy's actions were done *with purpose* to prevent, obstruct, or delay Defendants. Murphy did not want Defendants near his truck because he feared they would "plant" something. (Doc. 39, PgID 1011). However, Defendants already located suspected drugs in Murphy's wife's purse and told him the same. After all, if there were suspected drugs in the truck, common sense demands that a person would not want more drugs found by the police. It cannot be said that Murphy's actions to obstruct were mere inquiries to police about the purpose or status of the investigation. From the start, Defendants told Murphy what they were doing and why. His continued questioning, statements, and his behavior made it clear his purpose was to distract the Defendants and get them away from his truck–a truck that was a focal point of their investigation.

Third, the record makes clear that Murphy's actions "actually" hampered and impeded the Defendants' investigation. A thirteen-second delay supports probable cause for obstructing official

business. *United States v. Staats*, 2025 U.S. Dist. LEXIS 11840, *22 (N.D. Ohio). As does delay of one or two seconds. *Staats*, supra at * 19, citing *State v. Lenzy*, No. 2018CA00023, 2018-Ohio-3485, 2018 WL 4150868 (Ohio Ct. App. Aug. 27, 2018). Distracting an officer from his duties at the scene supports probable cause for obstructing official business. *State v. Sobczak*, 2019-Ohio-1600, ¶ 17-18 (11th Dist.)(Defendant *convicted* after distracting officer at the scene who remained responsible for the traffic violator in his vehicle and had not yet completed the tow inventory.); *State v. Herron*, 2011-Ohio-127, ¶ 62-63 (2nd Dist.)(Defendant *convicted* after screaming at police at a distance of seven feet during their investigation despite at least five warnings from the officer to leave her alone.); *State v. Montalvo*, 2020-Ohio-3418, ¶ 31 (11th Dist.)(Defendant *convicted* after interfering with arrestee, engaging the officers in "unnecessary conversation," and telling officers of a loaded gun in the vehicle.); *Body*, supra, at ¶ 23 (Defendant *convicted* after parking twenty-five feet from officers on a traffic stop and interrupting the officer telling her she needed to leave while arguing her right to observe.) Here, Murphy delayed Defendants for nearly two minutes and then required total focus on him to effectuate his arrest–an arrest wholly unrelated to Defendants' previous investigation pursuant to the traffic stop. Moreover, it is clear that police have lawful authority to make traffic stops and investigate crimes to which Murphy had no privilege to hinder. Further, even if probable cause did not exist as to obstructing official business (it did), McKnight could have arrested and charged Murphy under Ohio law with trespass (see above). Accordingly, Murphy's claim for unlawful arrest and seizure should be dismissed.

### F. Count VIII & IX: There is no viable false imprisonment claim.

Murphy erroneously relies upon an inapplicable claim of false imprisonment. False imprisonment is not an appropriate claim under Federal and Ohio law where the Defendants are state actors. "The tort of false imprisonment concerns 'purely a matter between private persons for a private end,' as opposed to a false arrest, which is an unlawful detention 'by reason of an asserted

legal authority to enforce the process of law'." *Snyder v. United States*, 990 F. Supp. 2d 818, 829 (S.D. Ohio 2014) citing *Vasquez-Palafox v. United States*, 2013 U.S. Dist. LEXIS 51626, *8 (N.D. Ohio). "[A]ny claim for false imprisonment against a government actor must fail." *Kareva v. United States*, 9 F. Supp. 3d 838, 845 (S.D. Ohio 2014). The same holds true under Ohio law. "Under Ohio law, false arrest and false imprisonment are separate and distinct torts. A false arrest refers to the unlawful deprivation of liberty by an authority with arrest powers. False imprisonment, alternatively, involves the unlawful detention by a private party." *Burr v. Burns*, 439 F. Supp. 2d 779, 790 (S.D. Ohio 2006); *Rogers v. Barbera*, 170 Ohio St. 241, 243 (1960)(false imprisonment "is purely a matter between private persons for a private end"); *Williams v. Cambridge Bd. of Educ.*, 370 F.3d 630, 642 (6th Cir. 2004).    Here, Murphy alleges that Defendants acted "under the color of law and within the scope of their employment" while arresting Murphy for a violation of the law, (Doc. 1, PgID 14), and this is not contested. Moreover, this was not a "private matter for a private end." Accordingly, Murphy's Federal and State claims of false imprisonment must be dismissed.

### G. Count X: The underlying claims have no merit thus negating a *Monell* claim.

Murphy cannot demonstrate that any policy, custom or practice of the City of Ironton caused any alleged violation of his rights. To establish municipal liability under what is commonly known as a *Monell* claim, the plaintiff must show that the municipality's "policy or custom" caused the violations of his or her rights. *Austin v. Mosley*, No. 23-1425, 2025 U.S. App. LEXIS 3286, at *6 (6th Cir. Feb. 10, 2025) citing *Hardrick v. City of Detroit*, 876 F.3d 238, 243 (6th Cir. 2017). The municipality's "deliberate action" must have been the "moving force" behind the violation. *Board of the County Comm'rs v. Brown*, 520 U.S. 397, 400, 117 S. Ct. 1382 (1997). A plaintiff may raise four distinct theories of municipal liability: (1) the existence of an illegal official policy or legislative enactment, (2) ratification of an illegal decision by an official with final decision-making authority, (3) the existence of a policy of inadequate training or supervision, and (4) the existence of a custom

14

of tolerance or acquiescence of federal rights violations. *Id.* citing *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019). Each of these theories "come with different elements and different evidentiary burdens." *Id.* citing *Woodall v. Wayne Cty.*, No. 20-1705, 2021 U.S. App. LEXIS 34149, 2021 WL 5298537, at *6 (6th Cir. Nov. 15, 2021). Here, Murphy's Complaint rests his *Monell* claim against the City on inadequate training or supervision and ratification by Defendant Wagner. (Doc. 1, PgID 15.)

To establish municipal liability based on a failure to train or supervise, a plaintiff must show that (1) the municipality's training or supervision was inadequate for the tasks that its officers must perform, (2) the inadequacy was the result of the municipality's deliberate indifference, and (3) the inadequacy was closely related to or caused the constitutional injury. *Mosley, supra* at *7 citing *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 286-87 (6th Cir. 2020). To prove that a municipality was deliberately indifferent to inadequate training, a plaintiff is required to show either (1) prior instances of unconstitutional conduct demonstrating that the City had notice that its training in that particular area was deficient and likely to cause injury, and did not act in response; or (2) a single violation of rights, accompanied by evidence that the City failed to train its employees to handle recurring situations presenting an obvious potential for such a violation. *Id*. citing *Jackson*, 925 F.3d at 836. The test for deliberate indifference in the failure-to-supervise context mirrors the test in the failure-to-train context. *Id.* at *11 citing *Morgan v. Wayne County*, 33 F.4th 320, 329 (6th Cir. 2022).

As shown above, and below, Murphy's claims against the individual Defendants are meritless. What is more is that the individual Defendants were *hired* pursuant to the City's process of a civil service exam and requisite interview process after successful completion of an Ohio police academy (Doc. 36, PgID 656). All were *trained* on the Taser and use of force policy. (Doc. 38, PgID 770); Doc. 34, PgID 540; Doc. 30, PgID 353; Doc. 32, PgID 473). And all were *supervised* and the

15

Chief tracks their yearly training (Doc. 36, PgID 663), but supervision is also apparent by the Department's investigations into alleged malfeasance. The two Defendants with prior use of force complaints, McKnight (one prior instance) and Chance Blankenship (one prior instance) were investigated for the same. (Doc. 38, PgID 887-888; Doc. 34, PgID 557-558). Even more, no discipline from either event was related to use of force or unlawful arrest. (Doc. 38, PgID 888; Doc. 34, PgID 558). The hiring, training, and supervisory practices are not indicative of a deliberate indifference or a failure to investigate similar claims, which necessarily negates this municipality's liability.

Equally damning to Murphy's claim is the lack of a causal relationship between an inadequacy and an injury. "[W]here there has been no showing of individual constitutional violations on the part of the officers involved, there can be no municipal liability." *Baker v. City of Trenton*, 936 F.3d 523, 535 (6th Cir. 2019). See also *Griffith v. Franklin Cty.*, 975 F.3d 554, 581 (6th Cir. 2020). As illustrated in the sections precedent and subsequent, Murphy cannot prevail on his claims against the individuals. Accordingly, his claim against the City fails, too.

### H. Count XI: A lawful arrest precludes claims of assault and battery.

McKnight, Chance Blankenship and Allison's actions were lawful. "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham, supra* at 396. Thus, officers have the privilege to commit battery to effectuate an arrest. *Alley v. Bettencourt*, 134 Ohio App. 3d 303, 313 (4th Dist. 1999); *Lane v. Cole*, 2005 U.S. Dist. LEXIS 26102, *21 (S.D. Ohio). Only excessive force beyond that reasonably necessary supports claims of assault and battery. *A.T. v. City of Columbus*, 2008 U.S. Dist. LEXIS 70905, *19 (S.D. Ohio).

16

Assault and battery under Ohio law requires an unlawful touch with the intent of causing or creating a fear of injury. *Johari v. City of Columbus Police Dep't*, 186 F. Supp. 2d 821, 833 (S.D. Ohio 2020). Here, McKnight, Chance Blankenship and Allison were privileged to touch Murphy to effectuate a lawful arrest. That Murphy was ultimately taken to the ground, struck, and briefly tased is because of Murphy's active resistance and assaultive behavior and Defendants' reasonable, privileged responses to take him into custody. Nothing in the record indicates Defendants' actions were not privileged. Their actions were solely for the purpose of a lawful arrest and nothing further. Accordingly, Murphy's claim for assault and battery fails.

## I.   Count XII & XIII: Probable cause precludes a finding of malicious prosecution.

Murphy's malicious prosecution claim has no basis in fact or law. To prevail on a federal law claim, a plaintiff must demonstrate (1) that a criminal prosecution was initiated against the plaintiff and that the defendant "made, influenced, or participated in the decision to prosecute;" (2) that the state lacked probable cause for the prosecution; (3) that the plaintiff suffered a deprivation of liberty because of the legal proceeding; and (4) that the criminal proceeding was "resolved in the plaintiff's favor." *Jones v. Clark Cty.*, 959 F.3d 748, 756 (6th Cir. 2020) citing *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010). Ohio law is substantially the same. A plaintiff must demonstrate "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Criss v. Springfield Twp.*, 56 Ohio St. 3d 82, 84 (1990). Under Federal and Ohio law, a claim of malicious prosecution fails if probable cause exists. *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007); *Meakens v. Benz*, 515 Fed. Appx. 414, 419 (6th Cir. 2013); *Barstow v. Waller*, 2004-Ohio-5746, ¶ 46 (4th Dist.).

Here, it is undisputed that McKnight sent criminal affidavits to the prosecutor who ultimately decided file to criminal charges against Murphy; that the Lawrence County Prosecutor's Office filed charges that were subsequently dismissed; and that Murphy spent approximately one hour in jail

(Doc. 39, PgID 1014). Thus, between Federal and State law the issues remaining are whether those charges were filed with malicious intent and whether probable cause existed. As argued in Section E., McKnight had probable cause to arrest and charge Murphy. Murphy delayed the Defendants' investigation, trespassed on private property, resisted arrest, and ultimately struck McKnight in the face with free-swinging handcuffs. Further, the record is devoid of facts demonstrating malice. Murphy testified there was no animosity between he and McKnight (Doc. 39, PgID 945), and McKnight did not have prior interaction with Murphy, nor did he know the vehicle he stopped belonged to him. (Doc. 38, PgID 834). But even if malice did exist (it did not), it does not permit the inference of a lack of probable cause. *Donohoe v. Burd*, 722 F. Supp. 1507, 1518 (S.D. Ohio 1989); *Moore v. Barber*, 1990 Ohio App. LEXIS 2461, *9 (5th Dist.). The existence of probable cause implies there is no issues of material fact to support Murphy's claims. Accordingly, these claims should be dismissed.

### J. (Count XIV): An arrest is not grounds for an intentional infliction of emotional distress (IIED) claim.

Murphy cannot establish the elements of an IIED claim. A plaintiff alleging IIED must demonstrate 1) the defendant intended to, knew, or should have known their actions would cause serious emotional distress; 2) defendant's conduct went outside the bounds of decency; 3) that conduct caused plaintiff's psychological distress and 4) the mental distress is so serious that no person should have to endure it. *Thibodeaux v. B E & K Constr. Co.*, 2005-Ohio-66, ¶ 29, 2005 Ohio App. LEXIS 62, *19 (4th Dist.). Murphy cannot point to evidence in the record on any element of this claim. To the first and second elements, legally sanctioned events do not give rise to intentional infliction of emotional distress. *Turkoly v. Gentile*, 2021-Ohio-965, ¶ 34, 2021 Ohio App. LEXIS 996, *21, 2021 WL 1157689 (7th Dist.). Nor do "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Miller v. City of Xenia*, 2002 Ohio App. LEXIS 1315, *5,

2002-Ohio-1303 (2nd Dist.) citing *Yeager v. Local Union 20, Teamsters*, 6 Ohio St. 3d 369, 375 (1983). The law does not remedy hurt feelings. *Id*.

Third and fourth, Murphy's testimony does not demonstrate psychological distress, and even if it did, it is stress not so serious that no person should have to endure it. Murphy testified that he has mental issues and does not like to leave the house after the arrest, but he had no problem leaving the house after the incident to shake down a Fedex driver for rent money–jumping on the truck and telling him he would "beat his f***ing brains in." (Doc. 39, PgID 987-988). Moreover, he has not sought counseling or medical treatment for his alleged mental distress. (Id. at 979). The record does not support Murphy's claim for IIED. There is no *serious* distress, and even if there was, it was brought on by a lawful arrest pursuant to Murphy's conduct. Accordingly, this claim against Defendants should be dismissed.

### K. The Ironton Defendants are immune as their actions were lawful.

Defendants are immune from liability on Murphy's state law claims. Political subdivision immunity is analyzed under a three-tiered analysis. *Elston v. Howland Local Sch.*, 113 Ohio St. 3d 314, 317 (2007). The first tier establishes general immunity for political subdivisions. "[A] political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. §2744.02(A)(1). Here, the provision or nonprovision of police services or protection and the enforcement of any law are governmental functions. R.C. § 2744.01(C)(2)(a) and (i). Next, a court must determine if any exceptions apply under R.C. § 2744.02(B). *Elston*, ¶ 11. Those exceptions include, injury caused by negligent motor vehicle operation by an employee, negligent performance of employees in a proprietary function, injury from negligent roadway repair, injury from negligent acts of an employee in a public building, or where express civil liability is expressly imposed by statute. R.C.

19

§ 2744.02(B)(1-5). None of the exceptions to immunity apply. Accordingly, the City retains its immunity as to all state law tort claims.

A political subdivision's employee are also entitled to immunity unless their actions were: a) outside the scope their duty; b) done with malicious purpose, in bad faith, in a wanton or reckless manner; or c) if liability expressly applies by statute. R.C. § 2744.03(A)(6)(a-c). "[A] police officer cannot be held personally liable for acts committed while carrying out his or her official duties unless one of the exceptions to immunity is established." *Jones v. Soto*, 2023-Ohio-3107, ¶ 27 (9th Dist.)(Internal quotation marks and citations omitted.). Here, the Defendants were acting within the scope of their duties as police officers by investigating a traffic offense and subsequent potential drug offense and arresting Murphy for obstructing the same. In fact, Murphy's Complaint states the officers were "acting under color of law within the course and scope and in furtherance of [their] employment." (Doc. 1, PgID 3-4.) All of their actions were lawful which necessarily precludes allegations of malice, bad faith, or recklessness. Further, Murphy cannot point to any evidence in the record demonstrating such. Finally, no statute expressly imposes liability for lawful actions. Therefore, all individual Defendants retain their immunity.

## III.   <u>CONCLUSION</u>

Based upon all the foregoing, the Ironton Defendants respectfully request that this Honorable Court dismiss Murphy's claims against them, with prejudice.

<div style="margin-left: 40%;">

Respectfully submitted,

SURDYK, DOWD & TURNER CO., L.P.A.

<u>*/s/ Dawn M. Frick*</u>
Jeffrey C. Turner (0063154)
Dawn M. Frick (0069068)
Justin R. Marks (0103811)
8163 Old Yankee Street, Suite C
Dayton, Ohio 45458
(937) 222-2333, (937) 222-1970 (fax)

</div>

*Trial Attorneys for Evan McKnight, Chance Blankenship, Brandon Blankenship, Corey Allison, and the City of Ironton, Ohio*

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, a copy of which will automatically be forwarded to the parties or their counsel of record:

Tyler C. Haslam                                     Patrick Kasson, Esq.
HASLAM LAW FIRM, LLC                   Thomas N. Spyker, Esq.
P.O. Box 585                                          REMINGER CO., L.P.A.
Huntington, WV 25710                         200 Civic Center Drive, 8th Floor
*Attorney for Plaintiff*                           Columbus, Ohio 43215
                                                              *Attorneys for Defendant Pam Wagner*


*/s/ Dawn M. Frick*
Dawn M. Frick (0069068)